UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Securities and Exchange Commission,

Plaintiff,

v.

Lauramarie Colangelo,

Defendant.

---

17-CV-971
Decision and Order

On September 28, 2017, the Securities and Exchange Commission ("SEC") filed a complaint against three defendants—Tarek D. Baghat, Lauramarie Colangelo, and WealthCFO, LLC—alleging multiple violations of the Investment Advisers Act of 1940 ("Advisers Act"). Docket Item 1. Defendant Colangelo later entered into a consent judgment with the SEC, approved by this Court on April 5, 2018. Docket Item 10. The consent judgment included a permanent injunction from future violations of the Advisers Act and also provided that this Court would determine the amount of the civil penalty that would be imposed. The SEC moved for the imposition of a penalty, Docket Items 12, 13; Colangelo responded, Docket item 14; and the SEC replied, Docket Item 16. A hearing was held on May 11, 2018, and this Court reserved decision. Docket Item 18.

## FACTS[1]

Colangelo was the operations manager for WealthCFO, LLC, an investment advising company owned by Tarek Baghat. Although not an investment adviser herself, Colangelo engaged in conduct that helped Baghat misappropriate funds from his clients. Likely at Baghat's direction, Colangelo pretended to be one of Baghat's clients, a widow in her seventies, and called the Charles Schwab customer-service line to set up online access to the client's account.

Colangelo went out of her way to mislead Charles Schwab by concealing her identity: She readily provided the client's date of birth and home phone number when requested by the Charles Schwab agent; she fabricated a narrative, telling the customer service agent that her grandson was unavailable to help and that she was uncomfortable using a computer; and she repeatedly said that she was seventy-five years old, using words and expressions that might be expected from a septuagenarian. *See* Docket Item 11 Ex. 3.

After Colangelo set up online access, Baghat created a user name and password that gave him access to his client's funds and never disclosed any of that to his client. From December 2015 until around March 2016, Baghat used the account to make seven transfers—four to WealthCFO and three to himself—totaling $24,370. Colangelo apparently did not receive any portion of that money.[2]

---

[1] As part of the stipulated judgment, the "allegations of the complaint shall be accepted as and deemed true by the Court," and so this Court accepts those facts in resolving this motion. Docket Item 11 at 2.

[2] When asked a series of questions about the phone call, Colangelo asserted her Fifth Amendment rights. Docket Item 11 Ex. B 56-60. So there are many unanswered questions, including whether Colangelo knew about Baghat's scheme. Nevertheless, at

## DISCUSSION

### I. AIDING AND ABETTING VIOLATIONS OF THE ADVISERS ACT

Section 206 of the Advisers Act prohibits an investment adviser from defrauding a client or prospective client. 15 U.S.C. § 80b-6(1), (2). But investment advisers are not the only ones prohibited from such conduct—those who aid and abet a violation are equally liable. *See* 15 U.S.C. § 80b-9(f) ("[A]ny person that knowingly or recklessly has aided, abetted . . . or procured a violation of [the Advisers Act] . . . shall be deemed to be in violation of such provision . . . to the same extent as the person that committed such violation."); *SEC v. DiBella*, 587 F.3d 553, 571-72 (2d Cir. 2009).

Aiding and abetting liability is established by proof that: (1) there was a direct securities law violation; (2) the aider had knowledge of that direct violation; and (3) the aider and abettor substantially assisted the person who violated the law. *See DiBella*, 587 F.3d at 566. Here, Colangelo agreed not to contest the facts in the complaint as well as the conclusion that she violated the securities law by aiding and abetting Baghat. Docket item 11 at 2.

### II. PENALTY FOR ADVISER ACT VIOLATION

Section 209 of the Advisers Act provides the equitable relief and penalties that may be imposed for a violation of the Adviser Act. In addition to imposing permanent injunctive relief, 15 U.S.C. § 80b-9(d), district courts also may impose a civil penalty on

---

oral argument, the SEC candidly admitted that it has no reason to believe that Colangelo profited from Baghat's misdeeds. Docket item 20 at 7.

any person who violated the Act either directly or indirectly—that is, by aiding and abetting. 15 U.S.C. § 80b-9(e)(1); *see also*, *DiBella*, 587 F.3d at 571-72.

Civil penalties are intended not only to punish the violator but also to deter future violations. *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 286 (S.D.N.Y. 2007); *SEC v. Illarramendi*, 260 F. Supp. 3d 166, 183 (D. Ct. 2017). To accomplish this goal, the Advisers Act created three tiers of penalties, increasing in severity, based on the "facts and circumstances" of the violation. 15 U.S.C. § 80b-9(e)(2). A first tier penalty—capped at $5,000—applies to any violation; a second tier penalty—capped at $50,000—applies to a violation involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and a third tier penalty—capped at $100,000—builds on the second tier by adding a requirement that the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to the other persons." 15 U.S.C. § 80b-9(e)(2)(A)-(C).

To assess whether a penalty should be imposed and the amount of the penalty within each tier, a court should consider several factors. *See Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007). These include: (1) the egregiousness of the conduct; (2) the degree of the defendant's scienter; (3) the repeated nature of the violations; (4) the willingness to come clean; (5) the loss or risk of loss caused by the conduct; (6) the level of cooperation with the authorities; and (7) the defendant's current and future financial situation. *See SEC v. Zwick*, 2007 WL 831812, at *26 (S.D.N.Y. March 16, 2007).

Here, the SEC has obtained a permanent injunction against Colangelo and now asks the Court to impose a third tier penalty. Docket Item 11 at 8. The facts of the complaint clearly support at least a second tier penalty: Colangelo was necessarily deceptive in assuming the identity of a client to establish online access to the client's bank account. There is some question as to whether the loss the client suffered, $24,370, is a "substantial loss" within the meaning of the statute. *See SEC v. Pallais*, 2010 WL 5422531, at *4 (S.D.N.Y. Dec. 23, 2010) (finding no substantial loss sufficient for a Tier III penalty when the SEC failed to demonstrate that a large group of investors with substantial funds were exposed to the fraud and failed to adequately explain why the loss was substantial). Although the loss here may well have been substantial to Baghat's client, it certainly does not rise to the magnitude of loss in comparable cases and is a small fraction of the total funds misappropriated by Baghat. Nevertheless, and because the Court would impose the same penalty regardless of whether the violation falls within Tier II or Tier III, the Court assumes that a Tier III penalty applies.

Next, the Court weighs the factors noted above as they relate to Colangelo. Colangelo's conduct involved an egregious level of deceit, manipulation, and—at a minimum—reckless disregard of the impact of her actions. Her scienter is not entirely clear because she asserted her Fifth Amendment rights. But it is clear that she had done some advance planning for the phone call, as she had a story crafted and the client's home phone number and date of birth at her fingertips.

On the other hand, Colangelo's violation was limited to one isolated action. She readily admitted her wrongdoing, and she voluntarily entered into the consent agreement with the SEC. Aside from asserting her Fifth Amendment rights on advice of counsel, there is every indication that Colangelo has been cooperative with the authorities. What is more, she received no personal gain from her wrongdoing, which likely resulted from the direction of her boss. Finally, although she is currently making more money than she seems to have made while working for Baghat, Colangelo's resources are very limited and she suffers from a chronic, and costly, medical condition. *See* Docket Item 15 at 5.

Although Colangelo argued that the SEC has already penalized her by way of the injunction, that penalty seems toothless since she is not an investment advisor and had no plans to continue in that line of work. Therefore, to appropriately punish Colangelo and to deter others who may be in a similar position, a civil penalty of $7,500 is reasonable and appropriate.

## **<u>CONCLUSION</u>**

Based on everything above, it is hereby ORDERED that Lauramarie Colangelo shall pay a $7,500 penalty to the Securities and Exchange Commission; and it is further

ORDERED that within 14 days of this decision, the Securities and Exchange Commission shall submit a proposed judgment providing details—including the timing and possible methods of payment, etc.—for complying with this decision; and it is further

ORDERED that the defendant shall have 7 days to respond with a counter-judgment.

The Clerk of the Court shall close the file.

SO ORDERED.

Dated: May 23, 2018
Buffalo, New York

***s/Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE